# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RUSSELL WILSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 6:14-187 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## **REPORT AND RECOMMENDATION**

Russell Wilson ("Wilson") seeks review of an adverse decision on his applications for disability insurance benefits and supplemental security income available under the Social Security Act.[1] *See* 423(d)(1)(A), 1382c(a)(3).

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of*

---

[1] Supplemental Security Income, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provides an additional resource to assure that disabled individuals' incomes do not fall below the poverty line. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001). Supplemental Security Income is available to persons of all ages.

Disability Insurance, authorized by Title II of the Social Security Act and funded by social security taxes, provides income to insured individuals forced into involuntary, premature retirement by reason of disability. *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186 (1976).

*Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

Further, Congress directs reviewing courts to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

*A.    Personal*

Wilson, born in 1964, attended regular education classes and completed 2 years of college. (T. 36, 350). He held a variety of jobs including mower, cleaner, warehouse worker, landscaper, and security guard. (T. 203, 350). He stopped working in April, 2010, due to back pain. He subsequently was fired, reportedly because he could not get healthy enough to reassume employment. (T. 37, 202, 350). He has not worked since 2010. (T. 36, 202).

Wilson smokes two packs of cigarettes a day. (T. 476). Between 1978 and 1992, he drank thirty cans of beer a day. (*Id*.). From 1978 to 2001, he Wilson smoked three marijuana cigarettes a day. (*Id*.). His substance abuse now is in full remission. (T. 353).

B.  *Applications*

Wilson applied for disability insurance benefits and supplemental security income in 2011 at age 47. He claimed that he became unable to work as of April 15, 2010, due to back problems, anxiety, and depression. (T. 202).

### III.  Commissioner's Decision

After early administrative denials, Wilson requested an evidentiary hearing. His claim was assigned to administrative law judge, Patrick Kilgannon ("ALJ Kilgannon"). ALJ Kilgannon conducted an evidentiary hearing in July, 2012. (T. 30-59). Wilson, represented by legal counsel, attended and testified. (*Id*.). Also testifying was an impartial vocational expert, Pat Green ("VE Green"). (*Id*.). The remaining sources of evidence included medical records and medical consultant reports (both examining and nonexamining). (*Id*.).

ALJ Kilgannon initially found that Wilson did not engage in substantial gainful activity after his alleged onset of disability. He also found that Wilson met the insured status requirements of the Social Security Act through June 30, 2015.[2]

---

[2] Disability Insurance typically is more generous than Supplemental Security Income benefits. Once ALJ Kilgannon determined that Wilson was fully insured, his claim for Supplemental Security Income effectively became moot.

At Step 2 of sequential evaluation,[3] ALJ Kilgannon found that Wilson has a severe impairment consisting of degenerative disc disease. (T. 20). He declined, however, to find that Wilson has severe mental impairments:

> . . . [T]here is little to no evidence to support a finding that this impairment has more than a minimal effect on the claimant's ability to work. While the claimant reported that he takes medication for this condition, this medication is prescribed by his primary care doctor as the claimant does not see a psychiatrist. Further, there is no evidence that the claimant has ever been psychiatrically hospitalized. As a result the undersigned deems *this impairment* nonsevere.

(T. 21) (emphasis added, citations omitted).

After determining that Wilson's spinal impairment is not so extreme in degree as to be presumptively disabling under the Commissioner's listings of presumptively-disabling mental and physical impairments,[4] ALJ Kilgannon next made a predicate finding of "residual functional capacity."[5] He found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He is further limited to frequent bilateral pushing and pulling, no climbing of

---

[3] ALJ Kilgannon utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[4] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[5] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *2 (July 2, 1996).

ladders, ropes, or scaffolds, occasionally climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching and crawling, simple, routine and repetitive tasks in a low-stress environment *due to pain* and no constant or repetitive rotation, flexion or extension of the neck.

(T. 21) (emphasis added).

ALJ Kilgannon posed Wilson's reduced residual functional capacity to VE Green, and asked whether a person with that capacity could performing Wilson's past relevant work as a landscaper, security guard, and cleaner. VE Green responded negatively, explaining that each prior position required medium or heavy exertional capabilities. (T. 23). VE Green further testified, however, that a person with Wilson's residual functional capacity can perform alternative, available work, and he identified three representative occupations: order clerk, sorter, and addresser. (T. 24). ALJ Kilgannon determined that a finding of "not disabled" was appropriate under VE Green's testimony and the framework of Medical–Vocational Rule 201.19.[6] (T. 25).

ALJ Kilgannon denied Wilsons's applications in a written decision dated October 23, 2012. (T. 18-25). The Appeals Council denied Wilsons's request for review. (T. 1-6). Wilson then instituted this proceeding.

## IV. Points of Alleged Error

Wilson's brief proffers three "issues" slightly reworded here as points of error:

1. The Commissioner committed errors of law in determining the Plaintiff's severe impairments;

2. The Commissioner's finding that the plaintiff can perform a modified level of "sedentary" work is unsupported by the evidence; and

---

[6] Medical Vocational Guidelines are a matrix of administrative findings as to whether work exists in the national economy that a person can perform. *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

3. The ALJ failed to evaluate treating source opinions evidence pursuant to 20 CFR 404.1527.

(Dkt. No. 14, p. 1).

## V. Severity Determination

Existence and severity of impairments are determined at Step 2 of the sequential evaluation process. "Impairments" are anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); *accord* 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments significantly limit physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

In this circuit, a Step 2 severity inquiry serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

*A. Wilson's Challenge*

ALJ Kilgannon found that Wilson has one severe impairment, degenerative disc disease. He declined to find other physical and mental impairments, including depression and anxiety, to be severe impairments. Wilson contends that ALJ Kilgannon committed multiple errors with respect to these Step 2 findings.

First, Wilson quarrels with ALJ Kilgannon's "bland description" of "degenerative disc disease" to describe his spinal impairment when objective medical evidence reveals five herniated cervical and lumbar discs, some touching the spinal cord. Second, Wilson argues that ample medical evidence supports a finding that he has severe bilateral knee impairments. Third, he argues that his psychological disorders "are sufficiently documented" to support a finding of severe mental impairments. (Dkt. No. 14, pp. 11-15).

The Commissioner responds appropriately to each argument. The Commissioner's brief highlights evidence supportive of ALJ Kilgannon's Step 2 findings, and argues that it meets the substantial evidence standard. (Dkt. No. 17, pp. 5-10).

*B.    Discussion*

Wilson's arguments regarding the Step 2 finding essentially invite the court to re-weigh evidence and come to a different conclusion than did ALJ Kilgannon. For reasons articulated at the outset, a reviewing court must decline that invitation. A reviewing court, however, cannot shy away from its duty to determine whether administrative proceedings were conducted in accordance with the beneficent purposes of the Social Security Act. Before evaluating specific points, courts must first ensure that claimants received full and fair hearings. *See Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *accord Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

This threshold duty requires a "searching investigation" of administrative records to ensure that administrative law judges protect claimants' rights. *See Robinson v. Secretary of Health & Human Servs.*, 733 F.2d 255, 258 (2d Cir. 1984). In this instance, such inquiry unearths an important issue (not briefed by the parties) with respect to whether ALJ Kilgannon protected Wilson's right to a full and fair hearing regarding severity of his mental impairments.

1. Step 2 Determinations Regarding Mental Impairments

When mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a "psychiatric review technique" (sometimes referred to as a "special technique"). *See* 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Petrie v. Astrue*, 412 Fed. App'x 401, 403 (2d Cir. 2011) (summary order); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This technical method helps administrative law judges first determine whether claimants have medically-determinable mental impairments.[7]

This technique also enables administrative law judges to determine subsequently whether medically-determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue). Administrative law judges make these latter findings by applying what commonly are called "B" criteria relating to four functional areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Administrative judges must provide ratings of "[n]one, mild, moderate, marked, [or] extreme" for the first three areas. *Id*., at §§ 404.1520a(c)(4), 416.920a(c)(4). For the fourth category (episodes of decompensation), they must provide ratings on a five-point scale: "[n]one, one or two, three, four or more." *Id.*

---

[7] *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)(administrative law judge "must first evaluate [claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment"). Administrative law judges use diagnostic criteria set forth in each mental impairment Listing under paragraph A, sometime referred to as the "A" criteria.

Administrative law judges generally conclude that claimants' mental impairments are not severe when they receive ratings of "none" or "mild" in each of the first three areas and "none" in the fourth area. *Id.*, at §§ 404.1520a(d)(1), 416.920a(d)(1); *Kohler*, 546 F.3d at 266.

2. <u>Application</u>

The psychiatric review technique regulations require that an administrative law judge's decision must *reflect* application of the technique. They explicitly provide that the decision "*must* include a specific finding as to the degree of limitation in each of the functional areas" commonly referred to as "B" criteria. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) (emphasis added). ALJ Kilgannon, however, neither referenced nor applied the psychiatric review technique. Although the evidentiary record before him contained specific assessments of Wilson's limitations in the "B" criteria functional areas by a state agency reviewing psychiatrist,[8] ALJ Kilgannon disregarded them, and neither made or documented findings as to the degree of Wilson's limitation in any functional area.[9] Rather, ALJ Kilgannon decided that Wilson's mental

---

[8] The record contained a "Psychiatric Review Technique" form and also a "Mental Residual Functional Capacity Assessment" prepared by a state agency reviewing psychiatrist, D. Mangold. Dr. Mangold found moderate limitations in the following functional areas: ability to carry out detailed instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination with or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; and ability to respond appropriately to changes in the work setting. (T. 369-70).

[9] State agency psychologist Dennis M. Noia, Ph.D., diagnosed Wilson with Panic Disorder, Anxiety Disorder, Depressive Disorder, and Alcohol Abuse (in full remission). He provided a medical source statement opining about Wilson's vocation capabilities. (T. 353). Similarly, the State agency reviewing psychologist, Dr. Mangold, opined that Wilson appears to have ability to perform competitive work. (T. 367). These opinions, however, are expressed in the context of residual functional capacity, which is a distinct analytical issue from severity of a mental impairment.

impairment was not severe solely because (a) Wilson's anti-depressant medications were prescribed by a primary care physician instead of a psychiatrist, and (b) Wilson had no psychiatric hospitalizations.

Under the Administrative Procedure Act, substantive regulations are binding on both the Commissioner and federal courts when they are authorized by and consistent with the statute they implement, properly promulgated and "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §§ 706(2)(A), (C); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96(1979); *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *De Jesus v. Perales*, 770 F.2d 316, 327 (2d Cir. 1985), *cert. denied*, 478 U.S. 1007 (1986). ALJ Kilgannon, therefore, was not free to disregard the psychiatric review technique regulation. His failure to apply it, and his election to base a Step 2 severity finding on other extrinsic factors constitutes legal error. *See Kohler*, 546 F.3d at 269.

3. <u>Harmless Error Doctrine</u>

While ALJ Kilgannon's error is clear, whether it warrants reversal of the Commissioner's decision is another matter. That determination is not as amenable to facile solution. Accordingly, it is addressed separately.

Congressional mandates requiring courts to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative errors and defects not affecting "substantial rights" refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009). Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error. *See NLRB v. Enterprise Assoc.*, 429 U.S.

507, 522 n. 9 (1977). In other words, administrative legal error is harmless when the same result would have been reached had the error not occurred. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

The harmless error doctrine has been further honed in this circuit for errors in adjudicating disability-based claims under the Social Security Act. Three analytical models have potential application:

      *a.    Cichocki Standard*

Through regulations and rulings, the Commissioner prescribes various multi-factor evaluative protocols. There is a two-step protocol that requires consideration of seven regulatory factors for weighing subjective testimony.[10] There is a six-factor protocol for weighing forensic medical opinion.[11] Similarly, there is a seven-factor, function-by-function protocol for determining residual functional capacity.[12] Finally, of relevance here, the psychiatric review technique involves considering four criteria and separate findings of functional effects.

Reviewing courts, however, do not always insist on slavish adherence to administratively-prescribed evaluative protocols. Formulaic applications and robotic incantations generally are not necessary to survive judicial review. Rather, circuit jurisprudence has evolved to the point that failure to comply

---

[10] SSR 96–7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[11] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[12] SSR 96–8p, 1996 WL 374184, at *5–6; 20 C.F.R. §§ 404.1545 (b)–(d), 416.945(b)–(d).

literally with such protocols usually does not constitute harmful or reversible error provided that a reviewing court determines that an administrative law judge considered all the evidence, did not traverse the substance of the analytical protocol, issued a decision susceptible to meaningful review and with findings supported by substantial evidence. *See Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir. 2013) (declining to adopt a *per se* rule that failure to provide function-by-function analysis of residual functional capacity is grounds for remand).[13]

### b. Step 2 Version

*All* impairments, *i.e.*, both severe and nonsevere, must be factored into a residual functional capacity determination that precedes sequential Step 4.[14] Several courts conclude that an error in failing to identify *all* severe

---

[13] *See also Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order) ("no such slavish recitation of each and every factor [20 C.F.R. §§ 404.1527(c), 416.927(c)] [is required] where the ALJ's reasoning and adherence to the regulation are clear"); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004)(affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) ("ALJ need not explicitly address each of the seven factors [20 C.F.R. § 404.1529(c)(3)] ... because the factors are examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding")(internal citations omitted); *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012)("[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'") (internal citations omitted); *see generally Morales v. INS*, 208 F.3d 323, 328 (1st Cir. 2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." "Indeed, we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise. Accordingly, the IJ need not engage in 'robotic incantations' to make clear that he has considered and rejected a petitioner's proffered explanation").

[14] In making a finding regarding residual functional capacity, administrative law judges must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p, 1996 WL 374184, at *5.

impairments at Step 2 is harmless when an administrative law judge identifies *some* severe impairments at Step 2, and proceeds through subsequent sequential evaluation on the basis of combined effects of *all* impairments, including those erroneously found to be nonsevere. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (summary order).[15] Thus, when functional effects of impairments erroneously determined to be nonsevere at Step 2 are fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the Step 2 error.

   c.   *Psychiatric Review Technique Variant*

Failure to apply the psychiatric review technique was a matter of first impression for the governing circuit court of appeals in *Kohler*. Then-circuit-judge Sotomayor, writing for a unanimous panel, had no difficulty concluding that an administrative law judge's failure to evaluate each of the four functional areas ("B" criteria) and to record specific findings as the claimant's degree of limitation in those areas constituted error. *See Kohler*, 546 F.3d at 267-69. Specifically, the court found error because the administrative law judge did "not appear to have evaluated each of the four functional areas, and did not record specific findings as to [the Plaintiff's] degree of limitation in any of the areas."

---

[15] *See also Warren v. Astrue*, No. 10-CV-500S, 2012 WL 32971, at *4 (W.D.N.Y. Jan. 6, 2012) (despite ALJ's "lack of clarity" at step two, ALJ properly considered all the effects of all Plaintiff's impairments, making remand inappropriate); *Briggs v. Astrue*, No. 09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *4 (N.D.N.Y. Mar.4, 2011) (when ALJ concluded that Plaintiff had an impairment considered severe under the Act ... and continued with the sequential analysis, any arguable error in his findings ... at step two of the analysis was harmless); *McCartney v. Commissioner of Soc. Sec.*, Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D. Pa. May 8, 2009) ("Even if ... ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

*Id.* at 267. Circuit judge Sotomayor pondered, however, whether such error was harmless. In that regard, she concluded:

> While we leave open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless, *cf. Montgomery*, 30 F.3d at 100 (applying harmless error analysis to failure to follow 20 C.F.R. § 404.1520a),[16] the record in this case does not allow us to say that the ALJ's failure here was harmless. We can neither identify findings regarding the degree of Kohler's limitations in each of the four functional areas nor discern whether the ALJ properly considered all evidence relevant to those areas. We therefore cannot determine whether the ALJ's decision regarding Kohler's claim is supported by substantial evidence and reflects application of the correct legal standards.

*Kohler,* 546 F.3d at 269.

Thus, with respect to the issue now under consideration, there is direct guidance for lower courts. Failure to apply the psychiatric review technique is not harmless when a reviewing court cannot identify findings regarding the degree of a claimant's limitations in each of the four functional areas nor discern whether all evidence relevant to those areas was properly considered.

    4.    <u>Analysis</u>

ALJ Kilgannon's error cannot be declared harmless under what was referenced above as the "*Cichoki* standard." It was not clear that he properly considered all the evidence relating to severity of Wilson's mental impairment, his decision is not susceptible to meaningful review, and his reliance on extrinsic

---

[16] In *Montgomery v. Shalala*, the Eighth Circuit observed that the district court had applied a harmless error analysis to failure to follow 20 C.F.R. § 404.1520a [attaching a PRTF to the administrative law judge's decision] on the basis that the administrative law judge's questions to the vocational expert included the assumption that the hypothetical person suffered from depression and the same physical ailments and limitations that the claimant described. *See* 30 F.3d 98, 100 (8th Cir. 1994). The Eighth Circuit, however, rejected the district court's conclusion that the administrative law judge's failure to complete the PRTF was harmless. *Id*.

factors when making his severity finding traversed the substance of the analytical protocol of the governing regulation.

The error also cannot be declared harmless under the "Step 2 Version." While ALJ Kilgannon did find that Wilson has one severe physical impairment (degenerative disc disease), and he did proceed to subsequent sequential evaluative steps, there is no indication that he actually factored functional effects of Wilson's mental impairments into any subsequent finding. His residual functional capacity determination limited Wilson to "simple, routine and repetitive tasks in a low stress environment," which sometimes might be viewed as an accommodation of a mental impairment, but ALJ Kilgannon stated expressly that this limitation was necessary "due to pain," not mental deficits. (T. 21). In the absence of some indication that Wilson's mental impairments actually figured into ALJ Kilgannon's findings beyond Step 2, a harmless error finding is not warranted.

Finally, *Kohler* and its progeny do not provide a basis for declaring the error harmless. First, this case is indistinguishable from *Kohler* which found the error not harmless. Second, since *Kohler,* virtually every court in this Circuit that has encountered an administrative law judge's decision that does not even address the "special technique" required by 20 C.F.R. § 404.1520a, nor contain

findings as to functional limitations, has reversed and remanded for further proceedings.[17]

This type error was held to be harmless is *Arguinzoni v. Astrue*, No. 08–CV–6356–T, 2009 WL 1765252, at *8–9 (W.D.N.Y. June 22, 2009). There, a reviewing court determined that while an administrative law judge failed to document specific findings as to the degree of mental limitation in each ("B" criteria) functional area, he considered the entire record and made a determination regarding residual functional capacity after explicitly highlighting and considering the four functional areas central to the special technique. The court concluded that this constituted a sufficient analysis to permit adequate review on appeal. The case, therefore, was unlike *Kohler*.

*Arguinzoni* challenged a residual functional capacity determination, not a Step 2 severity finding. It is not, therefore, foursquare with Wilson's case. But, even if it were, it would not constitute authority for declaring harmless the

---

[17] *See Concepcion v. Astrue*, No. 3:09cv01376(SRU)(WIG), 2010 WL 2723184, at *10-11 (D. Conn. July 8, 2010) (remanding when administrative law judge did not address "special technique" or make any findings as to plaintiff's functional limitations in four areas) (citing *Kochanek v. Astrue*, No. 08-CV-3101, 2010 WL 1705290, at *6 (N.D.N.Y. Apr. 13, 2010) (remanding where the administrative law judge did not reference the special technique or make a specific finding as to each of the functional areas), *adopted by*, 2010 WL 1713438 (N.D.N.Y. Apr.28, 2010); *Wong v. Astrue*, No. CV-06-2949, 2010 WL 1268059, at *10 (E.D.N.Y. Mar. 31, 2010) (remanding where the administrative law judge failed to document 20 C.F.R. § 404.1520a findings); *Duell v. Astrue*, No. 8:08-CV-969, 2010 WL 87298, at *7 (N.D.N.Y. Jan. 5, 2010) (remanding where the administrative law judge failed to complete a distinct analysis of the degree of limitation in each functional area); *Holland v. Commissioner of Soc. Sec.*, No. 7:05-CV-0384, 2009 WL 3790190, at *3 (N.D.N.Y. Nov. 12, 2009) (remanding for development of the record and appropriate application and documentation of the special technique for evaluating mental impairments); *Oakes v. Astrue*, No. 5:06-CV-0332, 2009 WL 1109759, at *11 (N.D.N.Y. Mar. 5, 2009)(remanding case where the administrative law judge failed to complete the special technique); *Serrano v. Astrue*, 645 F. Supp.2d 64, 66 (D. Conn. 2009)(remanding where administrative law judge failed to follow the framework established by the regulations for evaluating the severity of a claimant's mental impairments at steps two and three); *Butcher v. Astrue*, 586 F. Supp.2d 54, 63 (D. Conn. 2008) (remanding where administrative law judge failed to apply the analysis required by 20 C.F.R. § 404.1520a)).

error here.  Unlike *Arguinzoni*, ALJ Kilgannon did not consider and highlight any of the four functional areas central to the special technique.  That left his decision devoid of sufficient analysis to permit effective review on appeal to determine whether his Step 2 finding is supported by substantial evidence.

Since the error here is not harmless under any analytical model, remand is appropriate for appropriate application and documentation of the "special technique" for evaluating mental impairments at 20 C.F.R. §§ 404.1520a and 416.920a. *See Charlton v. Commissioner of Soc. Sec.*, No. 7:12–cv–580 (GLS), 2013 WL 2403844, at *3 (N.D.N.Y. May 31, 2013) (administrative law judge's failure to follow the "special technique" requires remand inasmuch as the court cannot meaningfully review the determination).

## VI.  Other Alleged Errors

Adjudication of the remainder of Wilson's points of error is unnecessary, as the result will not change whether or not those points are meritorious.  Consideration of those points on their merits also is premature, as the court cannot speculate as to what effect, if any, application of the special technique may have on the remainder of ALJ Kilgannon's decision.[18]  *See Moore v. Astrue*, Civil No. 3:10–CV–0709 (CFD)(TPS), 2010 WL 4976756, at *5 (D. Conn. Dec. 2, 2010) (finding that the administrative law judge failed to apply the special technique such that the court could not determine whether the decision was

---

[18]   For example, an administrative law judge must take into consideration mental-impairment limitations on a claimant's "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting ...." when assessing residual functional capacity.  *See* 20 C.F.R. §§ 404.1545(c), 416.945(c).

supported by substantial evidence, and "remand[ing] so that [the plaintiff's] disability claim c[ould] be determined anew following full consideration of her mental impairments").

## VII. Recommendation

The Commissioner's decision should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the __20__ day of ____March____ 2015.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge